UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRANDEN HOLLAND,

    Plaintiff,

v.                                       Case No. 2:23-cv-398-JLB-KCD

J. CHAVARRIA and J. BASSILLO,

    Defendants.
_____/

## ORDER OF DISMISSAL

Plaintiff Brandon Holland, a prisoner of the Florida Department of Corrections, initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 generally alleging that he was injured by a window-grill that fell from his cell wall. (Doc. 1.) His second amended complaint (Doc. 27) is now before the Court for initial screening.[1]

After carefully considering Plaintiff's allegations, pleadings, and entire file, the Court dismisses his second amended complaint because the claims raised in Plaintiff's complaint are unexhausted.

---

[1] A prisoner who proceeds *in forma pauperis* in this Court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the court to dismiss a prisoner's civil action prior to service of process if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

### I. Background and Procedural History

Plaintiff initiated this action on June 2, 2023 by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983. (Doc. 1.) In his original complaint, Plaintiff alleged that he suffered an injury to his left ankle when, "unprovoked," a window-grill fell from his cell wall and onto his foot. (Id. at 4.) Plaintiff also asserted that he did not receive adequate medical care for the injury. (Id. at 8.) He alleged that Defendant Chavarria engaged in "malicious prosecution" by finding Plaintiff guilty of destruction of state property. (Id. at 4.) Plaintiff asserted that he filed grievances about the incident claiming that "the window-grill inside [his] cell caused serious physical injuries and medical could not provide assistance." (Id. at 10.) He attached the grievances to his complaint. (Doc. 1-1.)

Thereafter, Plaintiff filed an amended complaint. (Doc. 22.) He asserted the following:[2] On August 5, 2020, Plaintiff was moved to a new cell at Charlotte Correctional Institution. (Doc. 22 at 3, ¶¶ 9–10.) He did not sign a cell compliance sheet. (Id.) On August 6, 2020, the window-grill in Plaintiff's cell fell from the wall and landed on his left foot. (Id. at 5, ¶ 15.) Defendant Bassillo and another officer carried Plaintiff to medical. (Id. ¶ 16.) Medical gave Plaintiff a band aid and told him to stay off his foot. (Id. ¶ 17.) Defendant Bassillo placed Plaintiff back "into the altered cell" and left. (Id.) The next morning, other officers took pictures of Plaintiff's foot and the window-grill and moved him to another

---

[2] Plaintiff's second amended complaint is the operative pleading before the Court. Therefore, only the facts in the first amended complaint that are relevant to the resolution of claims raised in the second amended complaint are included here.

dormitory. (Id. ¶ 18.) The following week, Plaintiff could not receive medical treatment for his ankle because he was still on "state and personal restriction." (Id. ¶ 19.) Plaintiff filed grievances, but all were denied. (Id. ¶ 20.)

Plaintiff asserted that Defendant Chavarria violated his rights under the Eighth Amendment by "intentionally placing him inside of [an] unsecure cell and then punishing the plaintiff with destruction of state property, [in]adequate medical assistance, and an extended property restriction." (Doc. 22 at 6, ¶ 21.) He asserted that he was also placed on heightened security and faced disciplinary action for an escape charge. (Id.) Plaintiff asserted that Defendant Bassillo "intentionally placed plaintiff back into an unsecure cell with the window-grill unbolted from the wall" after his medical emergency. (Doc. 22 at 6, ¶ 22.)

After initial screening, the Court dismissed the first amended complaint as a shotgun pleading, but also reviewed and discussed Plaintiff's specific allegations "to consider whether amendment of Plaintiff's complaint would be futile." (Doc. 25 at 4.) The Court concluded that Plaintiff did not state a claim against Defendant Bassillo because he alleged merely negligent actions on the part of this defendant. (Doc. 25 at 4–5.) Likewise, the Court concluded that Plaintiff's assertions that Defendant Chavarria did not adequately inspect the window-grill before moving Plaintiff to the new cell (resulting in a false accusation that Plaintiff had vandalized the window) did not state a claim. (Id. at 5–6.) The Court dismissed the claims against Defendant Chavarria as follows:

> To the extent Plaintiff alleges that Defendant Chavarria was
> negligent for failing to adequately inspect the window-grill (as

3

> required by Florida Department of Corrections rules), he has not stated a constitutional claim. See discussion supra; Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000) ("[F]ailure to follow procedure does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence.").
>
> Next, to the extent Plaintiff argues that Defendant Chavarria wrongly accused him of vandalizing the window-grill or of attempting an escape, the filing of false disciplinary charges, standing alone, does not state a constitutional claim. The Constitution requires only that the plaintiff be afforded due process at the institutional hearing (on the allegedly false charges), which represents the plaintiff's opportunity to expose falsities or inaccuracies. See Freeman v. Rideout, 808 F.2d 949, 952 (2d Cir.1986)(recognizing that the protections from actions such as false disciplinary reports are found in "the procedural due process requirements as set forth in [Wolff v. McDonnell,418 U.S. 539 (1974)]"). Plaintiff does not allege that he did not receive due process at any disciplinary hearing(s). Therefore, even if the amended complaint was not dismissed as a shotgun pleading, Plaintiff's claims against Defendant Chavarria would be dismissed for failure to state a claim on which relief may be granted.

(Doc. 25 at 5–6.) Although the Court concluded that Plaintiff did not state a claim against either defendant, he was provided an opportunity to amend his complaint because the Court could not "discern the precise natures of Plaintiff's claims, [and could not], at this stage of litigation, conclude that amendment of the operative complaint would be futile." (Id. at 6.)

Plaintiff filed a second amended complaint on October 5, 2023. (Doc. 27).

## II.   Second Amended Complaint

In his second amended complaint, Plaintiff once again asserts that his left foot was injured by a falling window-grill in his cell. (Doc. 27.) He repeats his assertions surrounding his move to a new cell on August 4, 2020. (Id. at 3.) However, the factual allegations regarding the cause of the window-grill collapse

4

differ greatly from the allegations in his first two pleadings. Instead of arguing that the defendants were negligent or deliberately indifferent for putting him an uninspected cell with a faulty window-grill, he alleges—for the first time—that the defendants called Plaintiff to the back window of his cell, and then used a hammer and their bare hands to break the back window glass, destroy the thirty-pound window-grill, and "purposely" push the grill into Plaintiff's cell and onto his left foot, causing his injury. (Id. at 3–8.) Specifically, Plaintiff alleges:

> Defendant J. Chavarria acted under color of state law when he acted with a deliberate indifference and exposed Plaintiff to an unreasonable risk of harm when Defendant J. Chavarria called the Plaintiff to [a] cell back window at approximately in between the hours of 12 a.m. and 3 a.m. and purposely broke the window glass and pushed the entire window-grill into Plaintiff['s] cell from the outside. With the window-grill weighing more than 30 pounds, the Plaintiff suffers injury to the left ankle, as the window-grill collapsed.
>
> . . .
>
> Defendant J. Bassillio acted under color of state law when he acted with deliberate indifference and exposed Plaintiff to an unreasonable risk of harm when Defendant J. Bassillio called the Plaintiff to [a] cell back window at approximately in between the hours of 12 a.m. and 3 a.m. and purposely broke the glass to the window with a "hammer tool" and repeatedly banged on the window-grill with a hammer and pushing the entire window-grill into Plaintiff['s] cell from the outside. With the window-grill weighing more than 30 pounds the Plaintiff suffers injury to the left ankle as the window-grill collapsed.

(Id. at 7–8 (minor alterations for clarity).) Plaintiff claims that the defendants violated his Eighth Amendment right to be protected from cruel and unusual punishment when they destroyed his cell window and deliberately pushed the 30-pound window-grill onto his left foot. He sues both defendants in their official and individual capacities. (Id. at 7, 8.) Plaintiff asserts that he exhausted the claims

5

by presenting "some of the facts relating to the complaint" in his grievances, which were denied.  (Id. at 5.)  He attaches his grievances to his second amended complaint.  (Doc. 27-2.)

### III.    Discussion

Before deciding whether Plaintiff has stated a constitutional claim in his second amended complaint, the Court considers the nature of the wrong alleged in the complaint.  The facts now alleged—that the defendants deliberately shoved a heavy window-grill onto Plaintiff's foot—are considerably different (and give rise to a different type of civil action) than the negligence and due process claims dismissed by the Court's September 19, 2023 screening order.  (Doc. 25.)

In contrast to his earlier complaints, Plaintiff now alleges that the defendants deliberately and wantonly used unnecessary force to harm him.  It is well established that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Whitley v. Albers, 475 U.S. 312, 319 (1986).  To determine "whether the use of force was wanton and unnecessary . . . [courts] evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' "  Hudson v. McMillian, 503 U. 1, 7 (1992) (quoting Whitley, 475 U.S. at 321).  Plaintiff alleges that the defendants summoned him to the cell window and used their hands and a hammer to break the window glass and deliberately shove the heavy window-grill onto Plaintiff's foot.  Presumably, there was no reason for the defendants' actions other than to cause Plaintiff pain.

Therefore, the Court finds that Plaintiff has stated a constitutional excessive force claim against both defendants.  However, this does not end the Court's inquiry.

Section 1997e(a) of the Prison Litigation Reform Act (PLRA) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  And "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000).  "The plain language of the statute makes exhaustion a precondition to filing an action in federal court."  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citation omitted).

While failure to exhaust is considered an affirmative defense that can be waived by a defendant, see Brooks v. Warden, 706 F. App'x 965, 969–70 (11th Cir. 2017), if the face of the complaint indicates that exhaustion did not occur, the Court has the authority to sua sponte dismiss the Complaint.  See Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint."); Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2007) ("[T]he district court did not err by dismissing the complaint, pursuant to § 1915A, because [plaintiff's] failure to exhaust administrative remedies—an affirmative defense — was clear from the face of the complaint.").

Plaintiff asserts that, in his grievances to the institution and Warden, he "presented some of the facts relating to this complaint on August 10, 2010. Plaintiff [received] a response saying that the grievance had been denied. On September 11, 2020, Plaintiff appealed the denial of the grievance." (Doc. 27 at 5.) To support his allegation that he exhausted his claims, Plaintiff attached the aforementioned grievances and grievance appeals to the second amended complaint. (Doc. 27-2.) On August 6, 2010, Plaintiff filed a grievance stating the following:

> On Tuesday August 4, 2020, I was moved from G1102 to F2109 [approximately] before dinner. L.T. Chavarria C.I.T. me for allegedly "not wanting to move rooms." I complied and moved to G2109. Now Thursday still with no property [approximately] 1 A.M. to 7 A.M. the window casing inside the room fell directly off the wall and landed on top of my left foot. I initiated via sick call medical emergency. There was no cell evaluation paper signed by me stating that when I enter[ed] the room with 4 other white shirts "inspected" the room [approximately] before lunch. That window seal should never have been able to come off. And if it was, I should have never been C.I.T. into the room.

(Doc. 27-2 at 6.) Plaintiff filed a follow-up grievance (or premature grievance appeal) on August 10, 2020 stating:

> There is absolutely no way that I could have removed the window guard from the window or altered the condition of the window. The window guard was already defective prior to me being placed in the cell. Had a cell inspection been properly conducted prior to me being placed in the cell, the fact that the window guard was defective would have been discovered. Therefore, I should not be charged with the destruction of state property where the issues I'm having is me being placed on property restriction high custody. Cause of this issue the facts are cruel and unusual.

(Id. at 8.) The August 6 grievance was denied by Defendant Chavarria on the grounds that the cell was inspected prior to Plaintiff's placement, and Plaintiff

8

signed a cell inspection form. (Id. at 7.) The August 10 grievance was returned to Plaintiff without action as a premature appeal. (Id. at 9.)

Plaintiff filed two separate appeals to the warden concerning the window-grill. The first appeal was directed at his argument that the window was defective and had not been properly inspected:

> On Tuesday August 4, 2020, prior to moving into G2109, I never signed no papers. "Officials" had me sign no papers. My signature has been forged. Would like to call camera to show as proof. Lt. Chavarria, and whoever else on his side of duty is fabricating. Run the camera back, [approximately] before dinner time 3PM to 5PM. I never signed no papers prior to movement from. Lt. Chavarria shift. Nor did they inspect that room prior to movement from g1102 to g2109. The cameras would be proof so now D.O.C. own rules about falsified documents and fabricated reports is listed in ch33-208.002 Rules of Code and Conduct.

(Doc. 27-2 at 3.) The Warden denied the appeal and advised Plaintiff that he could forward his complaint to the Bureau of Inmate Grievance Appeals. (Id. at 4.)[3] In his second appeal, Plaintiff complained about the lack of medical care for the injuries to his foot:

> My grievance refers to my aid in care that was neglected in the Charlotte Department of Correction reflected to prior incident where a window guard inside the cell room (G dormitory, Wing 2) Room 111 fell off the wall and [considerably] swollen and split my left foot. I called numerous medical emergency which was denied on date's approx from date of incident to upcoming grievance date initiated. No check ups. No cold packs renewed. No change of ace bandage. No wheel chair. A lack of showers. And officials in the Charlotte Department of

---

[3] Plaintiff does not allege that he completed the grievance process by filing a formal grievance appeal. However, the Court need not consider whether these negligence-based window-grill claims are exhausted because it finds that the excessive force claims raised in the second amended complaint were not exhausted.

9

> Corrections refused to give me crutches for support in movement.  This grievance has been written to the Warden and ask for a response from the Warden as previous grievance to the Warden were not!

(Id. at 2.)   This second appeal was approved and referred to the security office for appropriate action.   (Id. at 1.)

The Court has carefully reviewed each grievance and grievance appeal and concludes that they did not exhaust the Eighth Amendment excessive force claims raised in Plaintiff's second amended complaint.   In his grievances (and first two complaints), Plaintiff claimed that the window-grill in his cell simply fell because it was defective or inadequately bolted to the wall, and that he (Plaintiff) should not have been charged with destruction of state property.   In other words, Plaintiff raised negligence-based and (arguably) due-process claims in his grievances and first two complaints.   And while the allegations in his grievances may be sufficient to alert the officers to negligence or due process claims, the new claims alleging that the defendant officers <u>deliberately</u> shoved a thirty-pound window-grill onto his foot were not independently exhausted.

The purpose of the exhaustion requirement is to give notice of a problem to prison officials so that the officials have an opportunity to address the problem before litigation ensues.  Parzyck v. Prison Health Services, Inc., 627 F.3d 1215, 1217 (11th Cir. 2010) (recognizing that "[t]he PLRA seeks to eliminate unwarranted interference with the administration of prisons in order to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' ") (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Here, Plaintiff's grievances did not give notice of any excessive force claim. In fact, Plaintiff never alleged that any officer was affirmatively responsible for the window-grill collapse. Rather, Plaintiff specifically stated that the window-grill "**fell** off the wall" and landed on his foot. (Doc. 27-2 at 6 (emphasis supplied).) He argued that the window was defective prior to Plaintiff's placement in the cell, and that—had the guards actually inspected the window—"the fact that the window guard was defective would have been discovered." (Id. at 8.) In other words, the allegations asserting negligence in Plaintiff's grievances contradict those in the second amended complaint. If, as Plaintiff now states, the defendants actively destroyed the window with a "hammer tool" in Plaintiff's presence and then deliberately shoved the window onto his foot, he was required to alert prison officials to these actions in order to properly exhaust an Eighth Amendment claim.

In sum, Plaintiff was required to exhaust every claim raised in his amended complaint before filing suit. As such, he was required to file a separate grievance addressing the Eighth Amendment excessive force claims raised in the second amended complaint in order to properly exhaust his administrative remedies in connection with those issues. Because he did not do so, the Eighth Amendment claims are dismissed. See Arias v. Perez, 758 F. App'x 878, 882 (11th Cir. 2019) ("It would subvert the PLRA's purpose of granting prison authorities 'time and opportunity to address complaints internally before allowing the initiation of a federal case,' if a prison could grant all the relief a prisoner asked for and yet still find itself subject to suit.") (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002)).

See also Manning v. Reed, No. 2:19CV00147-BSM-JTK, 2020 WL 6221159, at *4 (E.D. Ark. Sep. 29, 2020) (noting that "where an inmate alleged excessive force in his grievances but did not allege that any of the prison officials failed to protect him from that force," the plaintiff deprived prison officials "of the opportunity to investigate and resolve a failure to protect claim prior to the filing of a lawsuit in federal court"); Tate v. Andres, No. 2:18-cv-822 KJM ACP, 2022 WL 1104016, at *8 (E.D. Cal. Apr. 13, 2022) ("Plaintiff failed to properly exhaust his retaliation claim because he did not include allegations of retaliation in his initial grievance [alleging excessive force] and did not submit a separate grievance on that issue.").

### IV.   Conclusion

Because it is clear on the face of Plaintiff's second amended complaint that he did not exhaust his administrative remedies for any claim raised therein, it is dismissed for failure to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Okpala, 248 F. App'x at *73 (affirming screening dismissal of unexhausted complaint for failure to state a claim).   The Court already provided Plaintiff an explanation of the deficiencies in his first amended complaint, and he had an opportunity to address those deficiencies, but did not do so.   (Doc. 25.) Moreover, Plaintiff cannot now "cure" his failure to exhaust because exhaustion of administrative remedies must occur before a complaint is filed.  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).   Accordingly, the dismissal of this complaint is without leave to amend.   See Foman v. Davis, 371 U.S. 178, 182 (1962) (including futility of amendment and "failure to cure deficiencies by amendments previously allowed" as reasons for denying leave to amend).

12

Accordingly, it is

**ORDERED**:

1. This case is **DISMISSED without prejudice** for failure to exhaust administrative remedies.   28 U.S.C. § 1915(e)(2)(B)(ii).

2. The Clerk is **DIRECTED** to enter judgment, deny any pending motions as moot, terminate any deadlines, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on December 27, 2023.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

`

SA:   FTMP-2
Copies: Brandon Holland

13